IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| GREGORY EARL WHITNER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| vs. | : | NO. 2:04-CV-145-WCO |
| | : | |
| RICK MOORE, Sheriff of Habersham County, individually and in his official capacity, and ISRAEL SEGERS, individually and in his official capacity, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

The captioned case is before the court for consideration of defendants Rick Moore and Israel Segers' joint motion for summary judgment [22-1]. In his brief in opposition to the motion [31-1], plaintiff Gregory Earl Whitner withdraws all claims except his Fourth Amendment claim against defendant Segers. (Pl.'s Resp., at 11). Accordingly, the court will consider defendants' summary judgment motion only as it relates to plaintiff's remaining claim and hereby **DISMISSES** plaintiff's complaint in all other respects and with regard to all other defendants.

## I. Factual Background[1]

Plaintiff Greg Whitner ("Whitner"), in his underlying civil action predicated upon 42 U.S.C. § 1983, alleges that on August 16, 2003, Habersham County Deputy Israel Segers ("Segers") arrested him without probable cause and wrongfully seized his property in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution as well as Article I, Paragraphs I and VIII of the Constitution of the State of Georgia. (Compl. ¶¶ 31, 39, 53, 54, 59, 60, 62, 63). Whitner also asserts that Habersham County Sheriff Rick Moore ("Moore") violated his federal and state constitutional rights by permitting and tolerating a pattern and practice by the Habersham County Sheriff's Office of not deferring to court orders and overreaching its lawful authority. (Id. ¶¶ 45, 58, 62, 63).

In April 2002, over a year before the incident upon which the present action is based, Whitner petitioned the Habersham County, Georgia Superior Court for a writ of mandamus to require the county to maintain two dirt and gravel roads, Snowy River Place and Chieftain Trail, leading to his residence. (Whitner Dep. at 6 & Ex. 6, at 70-71). In his mandamus action, Whitner claimed

---

[1] The recited facts are taken from the parties' statements of material facts and supporting documentation except where otherwise noted.

that those roads were public. (Id. at 4-6 & Exs. 4-6). Nonetheless, on July 5, 2002, the court denied Whitner's petition, finding that the roads were public but had not been accepted by Habersham County. (Id. at 6-9 & Ex. 7). As a result, mandamus relief was unavailable to Whitner to require the county to maintain the roads. (Id.).

Thereafter, late in the evening on August 15, 2003, Habersham County Deputy Segers was dispatched to Snowy River Place in response to a call reporting a trailer in the roadway on Chieftain Trail. (Segers Dep., at 16; Defs.' Ex. A, Segers Dec. ¶ 2). Segers arrived in his marked patrol car after midnight on August 16, 2003, at the point where Chieftain Trail veers off from Snowy River Place. (Segers Dep., at 16; Segers Dec. ¶¶ 2-3; Whitner Dep., at 86-88). There, he found an unilluminated flatbed trailer parked partially in the roadway so that a passing motorist could easily fail to see the trailer and accidentally strike it. (Segers Dep., at 16, 26; Segers Dec. ¶¶ 2-3; Whitner Dep., at 96, 104, 155). Concerned that the trailer posed a hazard to both life and property, Segers called a wrecker service to tow the trailer out of the roadway. (Segers Dep., at 16-17, 26).

Segers then noticed a tractor parked in the driveway of a nearby residence and surmised that the trailer was associated with it. (Id. at 17). He walked

3

toward the residence and knocked on the front door. (Id.; Whitner Dep., at 86-87). After a few minutes, Whitner appeared and informed Segers that the trailer parked on Chieftain Trail belonged to him. (Id.). Segers asked Whitner to move the trailer. Whitner refused to do so and instead told Segers to write him a ticket. (Segers Dep., at 17; Whitner Dep., at 22, 86-87). Segers refused, explaining that he just wanted the trailer moved. (Id.). Whitner responded by threatening to sue Segers if he had the trailer towed and slamming the door in Segers' face. (Id.).

Segers returned to the road to wait for a wrecker and to warn oncoming motorists of the trailer obstructing the road. (Segers Dep., at 17). Five minutes later, Whitner walked down to the road to speak with the officer. Segers again requested that he move the trailer. (Segers Dep., at 41; Whitner Dep., at 157). Whitner refused, asserting that the roadway was private and traffic laws therefore did not apply. Whitner referenced the July 5, 2002 Habersham County Superior Court order but never showed a copy of that order to Segers. (Whitner Dep., at 122). He then requested that Segers write him a traffic ticket. (Segers Dep., at 23-24). Again Segers declined, explaining that the unlit trailer was creating a road hazard and that it must be moved from the roadway. (Segers Dep., at 17; Whitner Dep., at 88-89, 96). At that point, Whitner walked to the nearby tractor. (Whitner Dep., at 96). He started the vehicle, drove it up to the

4

trailer, and backed its hitch into the trailer so that the two were attached. (Segers Dep., at 18; Whitner Dep., at 90, 93-94 & Ex. 10).

Segers, believing that Whitner was going to move the trailer, cancelled his request for the wrecker service. (Segers Dep., at 18). Instead of moving the trailer, however, Whitner got out of the tractor and stated: "Now it's a motor vehicle, write it a ticket." (Segers Dep., at 18; Whitner Dep., at 96). Once more, Segers refused and told Whitner that he would have both the tractor and trailer towed if they were not immediately moved. (Segers Dep., at 18). Whitner again threatened to sue Segers. (Segers Dep., at 18; Whitner Dep., at 97-98). He then returned to the tractor and, with the engine still running, laid down in the back. (Whitner Dep., at 97-98, 101-02). Segers yelled for Whitner to move the vehicle, but Whitner ignored him. (Segers Dep., at 18-19, 34; Whitner Dep., at 98).

Segers waited approximately fifteen (15) minutes before concluding that Whitner was not going to move the tractor or trailer. (Segers Dep., at 19, 29; Whitner Dep., at 100). Because he believed both the tractor and trailer were road hazards that needed to be towed, Segers again requested wrecker services. (Segers Dep., at 19). Before the wreckers arrived, Whitner emerged from the trailer, and Segers arrested him without incident. (Id. at 19; Segers Dec. ¶ 3; Whitner Dep., at 99, 106). Whitner was later charged with obstruction of a law

5

enforcement officer and, as requested, was written a ticket for improperly parking the tractor and trailer on the roadway. (Segers Dep., at 19-20; Whitner Dep., at 30-31). While criminal charges were filed against Whitner in Habersham County State Court, they were later dropped. ( Id. at 135, 136-39).

**II.**

**Summary Judgment Standard**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). It is well settled that a court considering a motion for summary judgment must view the evidence in a light most favorable to the nonmoving party. See Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). It is important to recognize, however, that this principle does not require the parties to concur on every factual point. Rule 56 "[b]y its very terms . . . provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996). On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" Id. at 743. Adopting language from one of its sister circuits, the Eleventh Circuit stated:

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing

> substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

Id. (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." Id.

### III. Qualified Immunity Protects Defendant Segers from Liability

Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982)). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987); Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)). Because qualified immunity is a defense not only from liability but also from suit, it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Lee, 284 F.3d at 1194

(quoting GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998)).

To invoke qualified immunity, an official must first prove that the allegedly unconstitutional actions occurred while he or she was acting within the scope of his or her discretionary authority. See, e.g., Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998); Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997); Hudgens v. City of Ashburn, 890 F.2d 396, 404 (11th Cir. 1989); Rich v. Dollar, 841 F.2d 1558, 1563-64 (11th Cir. 1988). Here, Whitner concedes that Segers was acting pursuant to the performance of his duties and within the scope of his discretionary authority as a law enforcement officer. (Pl.'s Resp., at 4).

Once the official establishes that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. See Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991). The Supreme Court has set forth a two-part test for evaluating a claim of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001) As a "threshold question," the court must ask whether, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Id. However, if a constitutional violation can be made on the plaintiff's facts, the court must determine "whether,

9

at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201-02). Because both parties agree that Segers was acting within his discretionary authority on the night in question, the burden shifts to Whitner to show qualified immunity is inappropriate. See Harbert Int'l, 117 F.3d at 1281.

In his complaint, Whitner contends that Segers violated his Fourth Amendment rights by arresting him without probable cause. (Compl. ¶ 55). Probable cause to arrest exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003); see also Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990). Although probable cause requires more than suspicion, it does not require convincing proof and need not reach the same level of conclusiveness necessary to support a conviction. See Lee, 284 F.3d at 1195. Rather, an officer is entitled to qualified immunity even if he had only "arguable probable" cause to arrest for any offense, whether charged or not. Durruthy v. Pastor, 351 F.3d 1080, 1090 n.6 (11th Cir. 2003); Lee,

284 F.3d at 1195. The court's probable cause inquiry thus turns on whether Segers had reason to believe, given the facts as known to him, that Whitner obstructed him in the performance of his duties. See O.C.G.A. § 16-10-24(a) (2005).[2] "Whether the evidence in a particular case establishes that the actions taken hindered or obstructed the officer in making the arrest is for the trier of fact to decide." Weidman v. State, 222 Ga. App. 796, 797 (1996).

Whitner argues that Segers had no reason to believe that he was committing obstruction and consequently did not have probable cause to arrest him for any offense. (Pl.'s Resp., at 5). Whitner does not dispute that he knew Segers was a law enforcement officer, that Segers believed the tractor and trailer were roadway safety hazards, and that Segers wanted the vehicles moved from the road. (Segers Dep. at 16-17; Whitner Dep., at 22, 86-89). He also admits that each time Segers requested the tractor and trailer be moved, he refused to comply. (Whitner Dep., at 90, 93-94 & Ex. 10, at 97-97). According to Whitner, however, Chieftain Trail is a private roadway over which law enforcement lacks the authority to enforce state laws. (Id. at 5, 7).

---

[2] As O.C.G.A. § 16-10-24(a) provides, "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." O.C.G.A. § 16-10-24(a) (2005).

11

Georgia law provides that a private road is "one located on privately owned land . . . and is open for the benefit of one or more persons and not for the general public." O.C.G.A. § 32-1-3 (2005).[3] Whitner alleges that he informed Segers that the road was private and offered to produce a court order proving so. (Segers Dep., at 23). Nonetheless, Whitner notes, Segers did not ask to see the court order, call dispatch, or attempt to contact other county officials to learn whether the assertion was true.[4] (Id. at 24). Whitner thus opines, "When an officer is provided with information [that] draws into question his authority to act, he must investigate whether he still has lawful authority. He can not [sic] purposefully blind himself to that information." (Pl.'s Resp., at 8, 11). Because Segers was "on notice" that Chieftain Trail was a private roadway but chose purposefully to ignore proffered information questioning his authority to act,

---

[3] Defendants challenge Whitner's assertion that Chieftain Trail is private, as Whitner concedes that the roadway has been open to the general public for many years. (Whitner Dep., at 6-9 & Ex. 7, at 1). At the very least, defendants aver, the general public therefore had an easement to use the road, making it a "public roadway." See O.C.G.A. § 32-1-3(24) (2005); Smith v. State, 248 Ga. 154, 159-60 (1981) (holding that easement created when there is public use of land "for such a length of time that the public accommodation and private rights might be materially affected by the interruption of the enjoyment").

[4] Defendants assert that Whitner has provided no evidence in the records that Segers "knew that someone within the county government would be able to tell him whether the road was public or private." (Defs.' Reply, at 3 n.1).

Whitner infers, Segers did not objectively and reasonably believe that the roadway was public. (Id. at 8, 11).

Additionally, Whitner contends that Segers was required to have lawful authority to act at the time he was arrested for obstruction. (Id. at 6). Whitner avers that Segers had no authority to seek removal of the tractor or trailer from the private roadway. (Id. (citing O.C.G.A. § 40-6-3 (2005); Chatham County v. Allen, 261 Ga. 177, 177 (1991) (holding that a private road may have persons other than its owners travel upon it without ceasing to be private)).[5] Since Segers lacked such authority, Whitner maintains that his refusal to comply with Segers' orders to move the tractor and trailer could not constitute obstruction. (Pl.'s Resp., at 6). Whitner goes on to reason that Segers should not be entitled to qualified immunity because he knew that Chieftain Trail was a private road and, as such, he had no legal authority to enforce traffic laws on that roadway; Segers' conduct indicates he did not reasonably believe that Whitner was committing

---

[5] Defendants argue that Whitner misreads Chatham County v. Allen, 261 Ga. 177, 177 (1991), to argue that Chieftain Trail was a private road. (Defs.' Reply, at 2). In Allen, defendants claim, the court held that a county was not required to "develop an unopened, but dedicated and accepted, road" because such roads are not public roads within the meaning of O.C.G.A. § 9-6-21(b). 261 Ga. at 177. Defendants distinguish this case from the one here, where Chieftain Trail is open and developed, frequently used by motor vehicles, and undisputedly accepted by the public at large. (Defs.' Reply, at 3 (citing Smith, 248 Ga. 159-60)).

obstruction at the time of arrest; and Segers did not have probable cause to arrest Whitner for failing to move the tractor and trailer. (Id. at 11). By arresting him, Whitner contends, Segers violated his Fourth Amendment rights and is not entitled to invoke qualified immunity as a defense.

Segers maintains that he had probable cause to arrest Whitner in light of the facts and circumstances as known to him before Whitner's arrest. (Defs.' Resp., at 5, 6). Consequently, Segers asserts that it was reasonable, or at least arguable,[6] for him to believe that Chieftain Trail was a public road, over which traffic laws could be enforced,[7] and to request that Whitner remove the potentially hazardous

---

[6] A law enforcement officer is entitled to qualified immunity even if he had only "arguable probable cause" to arrest for any offense, whether charged or not. See Durruthy v. Pastor, 351 F.3d 1080, 1090 n.6 (11th Cir. 2003); Lee, 284 F.3d at 1195. Arguable probable cause exists when "an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Durruthy, 351 F.3d at 1089. In determining whether there is arguable probable cause, the courts apply an objective standard, asking "whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation." Vaughan v. Cox, 264 F.3d 1027, 1036 (11th Cir. 2001).

[7] Defendants argue, and Whitner does not directly refute, that Segers had authority to act under O.C.G.A. §§ 32-6-2(1) (discussing an officer's authority to regulate parking), 40-6-2 (discussing vehicle operator's duty to comply with traffic officer's directions), 40-6-397 (discussing penalties for aggressive driving), or the state's general police power to have vehicles removed from public roadways, see South Dakota v. Opperman, 428 U.S. 364, 369 (1976) (holding that the "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge");

tractor and trailer from the public roadway. (Id. (citing O.C.G.A. § 32-1-10 (2005) (providing law enforcement officers with the duty "to enforce any provision [of the code] which states that any act or omission is unlawful")). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003). See also Hudson v. Hall, 231 F.3s 1289 (11th Cir. 2000); Pickens v. Hollowell, 59 F.3d 1203, 1207 (11th Cir. 1995); Williams v. City of Albany, 936 F.2d 1256 (11th Cir. 1991). Accordingly, Segers maintains that Whitner "thwarted, interposed obstacles, hindered, delayed, impeded, and harassed" him in the performance of his duties, so that he believed that there was probable cause to arrest Whitner for obstruction. (Defs.' Reply, at 5 (citing O.C.G.A. § 16-10-24(a); Woodward v. Gray, 241 Ga. App. 847, 849 (2000) (defining obstructive conduct)).

As a result, Segers contends, and the court agrees, that Whitner has failed to show that qualified immunity is inappropriate. To overcome his burden of proof, Whitner must demonstrate that Segers clearly lacked the authority to have the tractor and trailer removed or to arrest him. See Post v. City of Fort

---

McCoy v. Sanders, 113 Ga. App. 565, 566-67, 569-70, 571 (1966) (addressing police powers to deal with public nuisances and emergencies)).

Lauderdale, 7 F.3d at 1552, 1559 (11th Cir. 1993). At best, however, the court finds that Whitner believed Chieftain Trail was a private road and that the Habersham Superior Court order supported his position. While Whitner argues that this information obligated Segers to determine whether he had lawful authority, Whitner has not cited any statutory or case law that clearly provided Segers with "fair and clear warning" that seeking to remove the tractor and trailer from Chieftain Trail and arresting Whitner for obstruction violated his Fourth Amendment rights. Qualified immunity is a difficult hurdle for a plaintiff to overcome, as it is designed to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). It would appear that the plaintiff in this case was unhappy with a court ruling involving Chieftain Trail. It would appear that he was deliberately endeavoring to set a trap for the law enforcement officer, who apparently had no knowledge of the previous dispute but believed the road to be public. Whitner has not overcome that hurdle, and Segers is therefore entitled to qualified immunity. Defendants' motion for summary judgment is therefore **GRANTED** with regard to Whitner's Fourth Amendment claim against defendant Segers.

## IV. Conclusion

For the reasons stated above, defendants' motion for summary judgment [22-1] as to Whitner's remaining Fourth Amendment claim against Segers is hereby **GRANTED**. As Whitner has waived all other claims, the above-captioned action is hereby **DISMISSED**.

IT IS SO ORDERED, this 15th day of July, 2005.

                                        s/William C. O'Kelley
                                        William C. O'Kelley
                                        Senior United States District Judge